UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| and | Case No. 24-cv-968-JPG |
| NATASHA FIGUEROA f/k/a Rafael Santos Figueroa, | |
| Plaintiff-Intervenor, | |
| v. | |
| SIS-BRO INC., | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of defendant Sis-Bro Inc. to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) Counts II through VII of the Complaint in Intervention filed by plaintiff-intervenor Natasha Figueroa f/k/a Rafael Santos Figueroa (Doc. 35). Figueroa has responded with a notice of voluntary dismissal of Counts III, V and VII (Doc. 38), leaving only Counts II, IV, and VI in dispute in the pending motion. Figueroa has responded with respect to those claims (Doc. 37), and Sis-Bro has replied to that response (Doc. 39). The Court will grant the motion with leave to replead Counts II and IV.

**I.  Standard for Dismissal**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2).  This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *Bell Atl.*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777.  Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard.  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).  A complaint still need not contain detailed factual allegations.  *Bell Atl.*, 550 U.S. at 555. Nevertheless, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555.  That means that in an

employment discrimination case, "a plaintiff must advance *plausible* allegations that she experienced discrimination because of her protected characteristics." *Kaminski*, 23 F.4th at 776 (emphasis in original) (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021)). If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667; *see, e.g., Kaminski*, 23 F.4th at 776-77.

**II.    Facts**

    A.    <u>Facts Alleged</u>

Some background facts have been taken from the plaintiff EEOC's Complaint. They are not dispositive but help explain the context of the current motion to dismiss. Those facts plus the allegations in the Complaint in Intervention and the reasonable inferences that can be drawn therefrom establish the following relevant facts.

Sis-Bro is a pig farming operation with a facility in New Athens, Illinois. Figueroa began working for Sis-Bro at the New Athens facility in 2009 and met or exceeded all employment expectations at all times. Figueroa is of Salvadorean/Latina descent. At that time, she presented as a male, the sex to which she was assigned at birth, and used the name Rafael Santos Figueroa.

In 2018, Figueroa began transitioning from male to female and took the first name Natasha. During her transition, Clare Schilling, the president and part owner of Sis-Bro, commented that Figueroa looked horrible with breast implants and that he was a man who did not need that kind of surgery. She also frequently made other derogatory comments in front of Figueroa's coworkers, and she continued to call Figueroa by her given name of Rafael in a tone that Figueroa found mocking and condescending. Figueroa asked Schilling repeatedly to call her Natasha, not Rafael, but each time Schilling refused, saying, "But that's who you are."

3

Figueroa's supervisors repeatedly mocked her Latina background and made prejudiced comments like, "Latinos are only good for working." The conduct occurred almost every day. Sis-Bro knew about these comments because they were made openly and some were reported to Sis-Bro's management.

One of Figueroa's coworkers, Yasson, constantly harassed Figueroa for being transgender. On one occasion, Yasson asked her questions about her intimate body parts and exposed his genitals to her. He also constantly commented on her breast implants and speculated about how they felt, and on more than one occasion groped and fondled her breasts without her consent. Yasson did these things openly so everyone present was aware of his conduct. Figueroa reported some of Yasson's conduct to Sis-Bro's management.

In October 2021, Figueroa became so uncomfortable because of the foregoing conduct and the working environment became so intolerable to her that she quit.

Figueroa filed a charge with the EEOC, which found reasonable cause to believe Sis-Bro had violated Title VII. The EEOC filed this lawsuit on behalf of Figueroa, and in September 2024, Figueroa intervened as a plaintiff. She filed her Complaint in Intervention asserting in Count I a claim for a hostile work environment based on national origin in violation of Title VII of the Civil Rights Act. In Count II, she asserts a cause of action under 42 U.S.C. § 1981 for race and national origin discrimination. Count IV asserts a claim under the Illinois Gender Violence Act, and Count VI asserts a claim of *respondeat superior*. Figueroa has voluntarily dismissed her claims for sex discrimination in violation of the Illinois Human Rights Act ("IHRA") (Count III), for battery (Count V), and intentional infliction of emotional distress (Count VII). Sis-Bro now asks the Court to dismiss the remaining counts with prejudice.

**III.     Analysis**

      A.      <u>Count II:  42 U.S.C. § 1981</u>

Section 1981 is "a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008).  It provides, in pertinent part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).  The statute further defines making and enforcing contracts to mean "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  As in this case, claims under § 1981 are often brought in connection with the right to contract for employment.  *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

In the context of a constructive discharge case, to state a race discrimination claim under § 1981, a plaintiff must allege facts plausibly suggesting that she is a member of a racial minority, that the defendant intended to discriminate against her on the basis of her race, and that she would not have been terminated but for her race.  *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020) (confirming "but-for" causation element of § 1981); *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005); *Morris*, 89 F.3d at 413; *Onyango v. Nick & Howard, LLC*, 607 F. App'x 552, 555 (7th Cir. 2015).  The "but-for" causation required by § 1981 is more demanding than the "motivating factor" requirement of a race discrimination claim under Title VII.  *Comcast Corp.*, 589 U.S. at 336-38.  Under § 1981, race must have been the determinative reason for the adverse

5

employment action, not just one of several factors. *Arevalo-Carrasco v. Middleby Corp., Inc.*, 851 F. App'x 628, 630-31 (7th Cir. 2021).

As a preliminary matter, while race and ethnicity are protected under § 1981, national origin is not. *See Arevalo-Carrasco v. Middleby Corp., Inc.*, 851 F. App'x 628, 630 (7th Cir. 2021) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016)). Consequently, to the extent Figueroa's § 1981 claim is based on her national origin, she has not stated a claim. Her claim, if she is able to state one, must rest on her race or ethnicity.

Sis-Bro argues that Figueroa has not alleged facts plausibly suggesting that race or ethnicity was the "but-for" cause of her constructive discharge. Sis-Bro notes that Figueroa asserts she suffered harassment also due in part to her skin color, national origin, sex, and transgender status. Figueroa counters that a discriminatory act can have many causes, and multiple causes do not prevent one from being a "but-for" cause.

The Court has carefully reviewed the Complaint in Intervention and has not found sufficient facts to plausibly suggest Figueroa's race or ethnicity was the "but-for" cause of the conditions that caused her to quit. First, the cases relied on by Figueroa to show that there can be multiple causes for a discriminatory act were Title VII case, not § 1981 cases. *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 657 (2020); *Xiong v. Bd. of Regents of Univ. of Wisconsin Sys.*, 62 F.4th 350, 352 (7th Cir. 2023). Thus, they are of limited relevance.

Second, the way to determine if facts plausibly suggest that a protected category like race or ethnicity is a "but-for" cause is to ask, "what would have happened if the plaintiff had been white?" *Comcast Corp.*, 589 U.S. at 333. Under the facts alleged except if Figueroa had been white, she would not likely have been harassed by derogatory comments about Latinos.

6

However, she still would have been subject to the same harassment based on her sex and transgender status, which appears from the allegations to have been far more egregious than any harassment based on her race or ethnicity.  In other words, based on the current allegations, it appears that even if Figueroa had been white, she still would have faced allegedly intolerable working conditions based on her sex or transgender status.  The facts alleged simply do not plausibly suggest her race or ethnicity was the "but-for" cause of her constructive discharge.  *See Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022) (stating "a plaintiff cannot allege multiple discrimination theories as the 'but for' cause for a Section 1981 violation"); *compare Bostock*, 590 U.S. at 656 (multiple "but for" causes possible in Title VII action).

However, at the pleading stage, Figueroa is permitted to plead alternative theories.  *See Peaster v. McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023) (noting complaints routinely plead alternative "but-for" causes for adverse action; citing *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584 (7th Cir. 2021) ("alternative pleading is both permitted and routine")); *compare Arora*, 2022 WL 7426211, at *3 (dismissing § 1981 claim because potential multiple causes of adverse action *not* pled in the alternative).  Although Figueroa does not plead race/ethnicity discrimination as an alternative but-for cause, she may be able to do so.  The Court will therefore dismiss Count II without prejudice to the extent it is based on race discrimination and give Figueroa a chance to replead her § 1981 cause of action.

      B.      <u>Count IV:  Illinois Gender Violence Act</u>

The Illinois Gender Violence Act ("IGVA"), 740 ILCS 82/1 to 98, creates a private cause of action for a victim of gender-related violence "against a person or persons perpetrating that

gender-related violence." 740 ILCS 82/10.  As relevant to this case, gender-related violence includes (1) an act of physical aggression that satisfies Illinois' definition of battery and that was committed, at least in part, on the basis of sex; and (2) a physical intrusion or physical invasion of a sexual nature under coercive conditions that satisfies Illinois' the definition of battery.  740 ILCS 82/5.  The IGVA further defines "perpetrating" to mean personally committing the act of gender-related violence or personally encouraging or assisting the act.  740 ILCS 82/10.[1]

Sis-Bro argues that Figueroa has failed to allege that it "personally" committed, encouraged or assisted Yasson's alleged unlawful gender-related violence.  It notes that Figueroa pleads that it knew of Yasson's offensive conduct and failed to stop it, which emboldened Yasson and caused him to continue that conduct.  Sis-Bro cites a number District Court cases holding that knowledge of gender-related violence and failure to stop it does not usually amount to encouragement or assistance.  *See B.E. v. A.W.*, No. 3:24-CV-50016, 2024 WL 3984282, at *4 (N.D. Ill. Aug. 28, 2024); *Franks v. Anchez, Inc.*, No. 22 C 1763, 2022 WL 4325406, at *2 (N.D. Ill. Sept. 19, 2022) (collecting cases).

Figueroa argues that she has adequately pled facts plausibly suggesting that knowing of and ignoring Yasson's gender-related violence qualifies as encouraging and assisting it.  It points to *Cruz v. Primary Staffing, Inc.*, No. 10 C 5653, 2011 WL 1042629 (N.D. Ill. Mar. 22, 2011), in which an employer had received numerous complaints that an employee had committed gender-

---

[1] As of January 2024, an employer may be liable for gender-related violence "committed in the workplace by an employee . . . of the employer when the interaction giving rise to the gender-related violence arises out of and in the course of employment," 740 ILCS 82/11(a), if the employer unreasonably "failed to supervise, train, or monitor the employee" or "failed to investigate complaints," 740 ILCS 82/11(b).  The amended statute does not apply to Figueroa because she was not employed at Sis-Bro in 2024, and there is no indication the statute was meant to apply retroactively.  *See Rattunde v. Scores Chi. Gentleman's Club*, No. 23 C 14706, 2024 WL 4555336, at *3 (N.D. Ill. Oct. 23, 2024).

8

related violence against other employees and had responded by suggesting the victims not come back to work. *Id.* at *1. When plaintiff Cruz became a victim, she sued under the IGVA claiming the employer encouraged or assisted the gender-related violence, and the District Court declined to dismiss the IGVA claim. *Id.*

Figueroa has alleged in the Complaint in Intervention nothing more than Sis-Bro's knowledge of Yasson's conduct and inaction to stop it. In the circumstances described in this case, this is not enough to plead that Sis-Bro personally encouraged or assisted gender-related violence.

This Court had the occasion to consider the very question of what constitutes encouraging or assisting gender-related violence in *Doe ex rel. Smith v. Sobeck*, 941 F. Supp. 2d 1018 (S.D. Ill. 2013). There, the Court opined that Illinois courts would find that encouraging or assisting implied "a conscious, active role, not merely a failure to act or tolerance of a situation," and that knowledge and inaction were not enough. *Id.* at 1028. This understanding has been confirmed by at least one Illinois Appellate Court. *Noto v. Shlifka*, No. 2-24-0093, 2024 WL 4929728, at *16 (Ill. App. Ct. 2d Dist. 2024) ("one who encourages or assists knowingly *takes some action* that helps another person in some way," (emphasis added) but allowing that in some circumstances knowledge and inaction could be enough). There do not appear to be any circumstances pled in this case that would render inaction or tolerance more akin to the action implied by "encouraging or assisting." Thus, the Court finds Figueroa has not stated a claim under the IGVA.

The Court declines to follow *Cruz*, on of the few cases to find pleading simple knowledge and inaction sufficient to constitute "encouraging or assisting." The Court notes that the *Cruz* court provided a cursory analysis of the relevant question. This Court is more inclined to follow

9

the numerous cases cited by Sis-Bro that gave a more searching analysis and arrived very near to this Court's own conclusion in *Doe v. Sobeck.* For these reasons, the Court will dismiss Figueroa's IGVA claim without prejudice to repleading to show why Sis-Bro's inaction in this case was sufficiently akin to action to qualify as "encouraging or assisting."

        C.        Count VI:  *Respondeat Superior* for Sexual Assault

Sis-Bro asks the Court to dismiss Count VI because there is no independent cause of action for *respondeat superior*. Instead, *respondeat superior* is a legal theory under which an employer can be held liable for torts of its employees within the scope of their employment. *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 980 (Ill. 2012). It further argues that sexual assault, by its very nature, is not within the scope of employment under the doctrine of *respondeat superior*. *Doe v. Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 62 (Ill. App. Ct. 2012). Finally, Sis-Bro argues that any underlying sexual assault-based torts for which it could be liable under a *respondeat superior* theory are time-barred or preempted by the IHRA and the Illinois Workers' Compensation Act.

Figueroa does not dispute that there is no independent cause of action for *respondeat superior* but asks the Court to allow Count VI to remain as a signal to Sis-Bro that it intends to hold it liable for Yasson's torts.

The Court will dismiss Count VI because there is no such cause of action, but the dismissal will be without prejudice to invoking that theory of liability should Figueroa ever proceed against Sis-Bro on any underlying tort to which *respondeat superior* could apply. But she has not pled any such underlying tort in this case. Her claims under Title VII (Count I), 42 U.S.C. § 1981 (Count II), and the IGVA (Count IV) have their own law about when an employer can be liable, and Figueroa has voluntarily dismissed her claims under the IHRA (Count III), for

state law battery (Count V), and for intentional infliction of emotional distress (Count VII). Even if she could conceivably use *respondeat superior* liability to hold Sis-Bro liable for those torts, there are no such claims in this case. There is simply no good reason to keep Count VI around to clutter up this case.

## IV.  Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Sis-Bro's motion to dismiss the Complaint in Intervention (Doc. 35) as follows;
    - Counts III, V, and VII are **DISMISSED without prejudice** pursuant to a notice of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i);
    - Count II is **DISMISSED with prejudice** to the extent it is based on national origin discrimination;
    - Count II is **DISMISSED without prejudice** with leave to replead to the extent it is based on race/ethnicity discrimination;
    - Count IV is **DISMISSED without prejudice** with leave to replead facts plausibly suggesting that knowledge and inaction amount to "encouraging or assisting"; and
    - Count VI is **DISMISSED without prejudice**;

- **ORDERS** that Figueroa shall have 30 days from entry of this order to file an Amended Complaint in Intervention to replead Counts II and IV. She need not seek leave of Court to file such an amended pleading; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  January 16, 2025**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
